TEXACO, INC., a Delaware Corporation,

v.

William J. O'CONNELL, Individually and doing business as Bill O'Connell's Texaco Service Station and Joan E. O'Connell, Defendants.

Civ. A. No. 26601.

United States District Court
E. D. Pennsylvania.

July 14, 1959.

Butler, Beatty, Greer & Johnson, Media, Pa., for plaintiff.

Thomas A. Curran, Edward Kassab, Chester, Pa., for defendants.

CLARY, District Judge.

This matter is presently before the Court on plaintiff's motion for a preliminary injunction to restrain the defendants from selling its trade-marked products "Texaco" and two grades of gasoline "Fire Chief" and "Sky Chief" at less than the minimum prices fixed by it under the provisions of the Pennsylvania Fair Trade Act of 1935 as amended, 73 Purdon Statutes, Section 8.

Plaintiff corporation is incorporated under the laws of the State of Delaware, having its principal office in the City and State of New York, and is duly authorized to do business in the Commonwealth of Pennsylvania. It is engaged in the business of producing, refining and selling petroleum and petroleum products, including the two "brand" gasolines referred to above. Plaintiff does not sell its products at retail in the Commonwealth of Pennsylvania.

Defendants William J. O'Connell and Joan E. O'Connell are operators of a gasoline station at Baltimore Pike, Route U.S. No. 1, Borough of Chester Heights, Delaware County, Pennsylvania, at which station they have been selling, and have continued to sell, "Fire Chief" and "Sky Chief" gasoline, purchased by them from the plaintiff for resale to the public under the trade names and under a supply contract entered into between the plaintiff and the defendants.

Early in January of 1959 plaintiff entered into a contract in the State of Pennsylvania with a retailer of its products, William F. Zuschnitt at Lancaster Pike and Greenwood Avenue, Paoli, Pennsylvania. This agreement entered into under the applicable provisions of the Pennsylvania Fair Trade Act of 1935 as amended (73 P.S. Sections 7 and 8) provided that said Zuschnitt would not resell plaintiff's products except at the stipulated minimum retail prices fixed by the plaintiff. On or about January 14, 1959, plaintiff notified all Pennsylvania retailers of its products that effective January 16, 1959 the plaintiff had stipulated minimum retail prices for its motor fuels in defendants' area, fixing the retail prices including State and Federal taxes at $ .279 per gallon for Texaco Fire Chief and $ .319 per gallon for Texaco Sky Chief. Receipt of this notice has been stipulated between the parties, together with notice from plaintiff to defendants on both February 3, 1959 and February 11, 1959, to cease and desist selling its gasoline products at less than minimum prices. It has been further stipulated that the defendants have continued subsequently to the notice and to the cease and desist warnings to sell the two brands of gasoline at less than the minimum prices provided in the Fair Trade Agreement above referred to.

This action was filed on July 2, 1959, and on that date, without notice, a temporary restraining order was entered restraining the defendants from selling plaintiff's two products at less than the stated minimum retail prices. Hearing on plaintiff's motion for a temporary injunction was fixed for July 8, 1959, on which date a hearing was held and testimony presented. At that time plaintiff established its ownership of the trademarks in question and produced evidence that it had spent over twelve million dollars in the year 1958 advertising its trade-marks nationally. It attributes a substantial portion of this advertising to promotion in Pennsylvania. Plaintiff also produced testimony of its Division Manager covering this area that the lowering of prices below the minimum stated in the Fair Trade Agreement would have a serious effect upon its business and would seriously hurt the good will of the company built up over a long period of years. However, there was no attempt to place a dollar figure on the past and prospective damage which plaintiff claimed.

This case and its three companion cases, viz., Texaco, Inc. v. Ernest Harrison, Civil Action No. 26602; Texaco, Inc. v. Michael Grassano, Civil Action No. 26603, and Texaco, Inc. v. Romeo Sangillo, et al., Civil Action No. 26604, are in this Court by reason of diversity of citizenship; the plaintiff, as aforesaid, be-

ing a resident of Delaware and all defendants being residents of the Commonwealth of Pennsylvania.

On the basis of statements made by counsel for the defendants at the hearing, not controverted by counsel for the plaintiff, it appears that the plaintiff here started identical suits in the Court of Common Pleas of Delaware County, Pennsylvania, In Equity, on April 21, 1959, titled as of March Term, 1959, Nos. 1504–1507 inclusive. These actions insofar as pleadings are concerned are essentially identical with the pleadings filed in this Court. A rule to show cause was issued out of that court against the several defendants, said rule requiring the defendants to show cause why a preliminary injunction should not issue against each of them. After a hearing before Honorable William R. Toal, Judge of that Court, the rules to show cause were denied and an order to that effect was entered on April 27, 1959. It was stated at the hearing in this Court by attorneys for the plaintiff that all of these actions had been discontinued as of July 7, 1959 for the reason that Texaco, doing business in each of the 10 counties of this district, had determined to centralize its Fair Trade enforcement actions in this Court rather than proceeding in the various courts of Common Pleas of the said 10 counties. Whatever its reason, it has in the instant cases dropped the actions in the Delaware County Court and the cases are now lodged in this Court.

The primary question to be decided in this and the companion cases is whether the plaintiff has on the record presently before the Court made a showing of irreparable damage. The conclusion of the Court is that on the record presented, it has not. There is a pleading allegation that the damages in each case do exceed $10,000 which at this juncture of the case is sufficient to vest apparent jurisdiction in this Court. It may well be that at trial on final hearing, plaintiff may be able to establish the minimum jurisdictional amount, and it may be that plaintiff upon proper showing will be entitled to a permanent injunction and possibly money damages. On these two points the Court expresses no opinion since the matter has not progressed sufficiently to establish these vital and essential elements. However, it is the feeling of the Court that more than has been shown here is required before a defendant should be subjected to the harsh remedy of a restrictive injunction. See, Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, Inc., 3 Cir., 268 F.2d 569, and Yakus v. United States, 321 U. S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834.

There is another facet of this case which merits comment, although not vital to the Court's decision which is based on the record in this Court. The plaintiff here had its choice of forums originally. It chose the Court of Common Pleas of Delaware County. The right here involved is a state-created right and certainly a state court is primarily the proper place to secure an interpretation of state law, even though this Court in diversity cases may and does sit for all practical purposes as a State Court in determining state rights. A judge of a competent Pennsylvania Court which had jurisdiction of the parties and jurisdiction of the cause of action in refusing the temporary injunction made a determination that there had been no showing of irreparable damage. While this finding may not have the effect of res adjudicata as between the parties, it certainly is entitled to a great deal of weight when the identical issue is shortly thereafter presented to a Federal court. Litigants in a Federal court, because of diversity, should have no greater advantage because of the fact that the action is in a Federal court rather than a State court, and this is particularly true where a state-created right is involved. See the discussion of this problem in Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

No showing of dire emergency has been made in this case which would warrant interference with a finding of a State court on the precise point. The

temporary injunction, therefore, will be refused in this case as well as the three above-mentioned companion cases, and the cases will proceed to trial on the merits. The foregoing shall be deemed to be the findings of fact and conclusions of law of the court.